UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| Don Zimmerman, Michael Cargill, Mario Jordan, and Travis County Taxpayers Union SPAC,<br><br>    *Plaintiffs,*<br><br>vs.<br><br>Travis County Healthcare District,<br><br>    *Defendant.* | )<br>)<br>)<br>)<br>)<br>)  Civil Action No. 1:12-cv-00972-LY<br>)<br>)<br>)<br>)<br>)<br>) |

**DEFENDANT'S MOTION TO DISMISS AND BRIEF IN SUPPORT**

Plaintiffs Don Zimmerman, Michael Cargill, Mario Jordan, and Travis County Taxpayers Union SPAC (collectively, "Plaintiffs") have failed to state a claim under Section 2 of the Voting Rights Act or under 42 U.S.C. § 1983 for a violation of their due process rights. Defendant Travis County Healthcare District ("the District") asks the Court to dismiss these claims pursuant to Federal Rule of Civil Procedure 12(b)(6), and would respectfully show the Court as follows:

### I.    INTRODUCTION

Plaintiffs seek to enjoin the canvassing of the ballots for Proposition 1. The ballot provision for Proposition 1 states:

> Approving the ad valorem tax rate of $0.129 per $100 valuation in Central Health, also known as the Travis County Healthcare District, for the 2013 tax year, a rate that exceeds the district's rollback tax rate. The proposed ad valorem tax rate exceeds the ad valorem tax rate most recently adopted by the district by $0.05 per $100 valuation; *funds will be used for improved healthcare in Travis County, including support for a new medical school consistent with the mission of Central Health, a site for a new teaching hospital, trauma services, specialty medicine such as cancer care, community-wide health clinics, training for physicians, nurses and other healthcare professionals, primary care, behavioral*

> *and mental healthcare, prevention and wellness programs, and/or to obtain matching funds for healthcare services.*[1]

Plaintiffs' suit centers on the italicized language above. They contend that this language was an improper addition to the statutory language authorizing the ballot measure, and that its inclusion violates Section 2 of the Voting Rights Act and their procedural due process rights. Plaintiffs also assert several state law claims under the doctrine of supplemental jurisdiction. Because Plaintiffs have failed to state a claim for a Voting Rights Act or a due process violation, this Court should dismiss all claims.[2]

## II.   ARGUMENT AND AUTHORITIES

Although Plaintiffs clearly opposed the passage of Proposition 1, they have not identified any violations of federal law that would permit this Court to enjoin the canvassing of the ballots. Plaintiffs' Second Amended Complaint does not provide grounds for entitlement to relief or state "factual allegations that when assumed to be true raise a right to relief above the speculative level." *See Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) ("To survive a Rule 12(b)(6) motion to dismiss, a complaint does not need detailed factual allegations, but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true raise a right to relief above the speculative level."). Instead, Plaintiffs ask this Court to enjoin a state election based on speculative allegations, none of which rises to the level of a

---

[1] This language was precleared with the Department of Justice, as required by Section 5 of the Voting Rights Act. The Department of Justice did not object.

[2] If the Court dismisses Plaintiffs' federal claims, it should also dismiss their state law claims. *See Broyles v. Texas*, 618 F. Supp. 2d 661, 699 (S.D. Tex. 2009) (Rosenthal, J.) ("The law within the Fifth Circuit Court of Appeals is and has been for almost three decades that claims premised on alleged violations of state election laws should be resolved in state courts. Federal Courts do not intervene in state election contests for the purpose of deciding issues of state law, if no federal constitutional question is involved." (internal quotation marks and citations omitted)), *aff'd*, 381 F. App'x 370 (5th Cir. 2010).

violation of the Voting Rights Act or Plaintiffs' due process rights.[3]  Accordingly, Plaintiffs' federal claims should be dismissed.

### A.     This Court should dismiss Plaintiffs' Voting Rights Act claim.

Plaintiffs first contend that the ballot language of Proposition 1 violates Section 2 of the Voting Rights Act.  Section 2 states:

> (a) No voting qualification or prerequisite to voting or standard, practice, or procedure shall be imposed or applied by any State or political subdivision in a manner which results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color, or in contravention of the guarantees set forth in section 4(f)(2) [42 USCS § 1973b(f)(2)[4]], as provided in subsection (b).
>
> (b) A violation of subsection (a) is established if, based on the totality of circumstances, it is shown that the political processes leading to nomination or election in the State or political subdivision are not equally open to participation by members of a class of citizens protected by subsection (a) in that its members have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice. The extent to which members of a protected class have been elected to office in the State or political subdivision is one circumstance which may be considered: Provided, That nothing in this section establishes a right to have members of a protected class elected in numbers equal to their proportion in the population.

42 U.S.C. § 1973.  "The essence of a § 2 claim is that a certain electoral law, practice, or structure interacts with social and historical conditions to cause an inequality in the opportunities enjoyed by black and white voters to elect their preferred representatives."  *Thornburg v. Gingles*, 478 U.S. 40, 49 (1986).

Plaintiffs allege that the inclusion of ballot language beyond that set out in Texas Health & Safety Code § 281.124 "present[s] an opportunity for denial of voting rights by a

---

[3] Because "[t]he power of the federal courts to throw out the results of a state election is 'drastic, if not staggering,'" it is "'a form of relief to be guardedly exercised.'" *Burton v. Georgia*, 953 F.2d 1266, 1268 (11th Cir. 1992) (quoting *Bell v. Southwell*, 376 F.2d 659, 662 (5th Cir. 1967)).

[4] 42 U.S.C § 1973b(f)(2) states: "No voting qualification or prerequisite to voting, or standard, practice, or procedure shall be imposed or applied by any State or political subdivision to deny or abridge the right of any citizen of the United States to vote because he is a member of a language minority group."

discriminatory result based upon the 'totality of the circumstances' test, within Section 2 of the Voting Rights Act, *upon voters with a [sic] less reading comprehension, and particularly among minority voters*." Pls.' 2d Am. Complaint at ¶ 17 (emphasis added).  Plaintiffs also allege that "[t]his is a violation of the Voting Rights Act as such change will tend to have a discriminatory effect on minority voters based on historical dat[a] such as reading comprehension." *Id.* at ¶ 10.  Plaintiffs' Voting Rights Act Claim fails for two reasons: first, Plaintiffs do not have standing, and second, Plaintiffs have failed to state a claim under § 2 of the Voting Rights Act.

    **1.    Plaintiffs do not have standing under Section 2.**

Plaintiffs' Second Amended Complaint does not allege (1) that Plaintiffs are minority voters; (2) that they have reading comprehension problems that prevent them from understanding the challenged ballot language; or (3) that the language of the proposition effectively denies them the right to vote.  Instead, the individual Plaintiffs claim standing because they "are residents of Travis County, Texas," "are over 18 years of age, licensed voters, and have the capacity to bring this action." Pls.' 2d Am. Complaint at ¶ 1.  The PAC Plaintiff alleges that it has standing "as it was formed specifically to oppose Proposition 1 and has a specific, particularized interest in the outcome of the ballot proposition." *Id.* at ¶ 2.  These allegations do not establish standing for their Voting Rights Act claim.

The Voting Rights Act grants standing to "'aggrieved persons' to enforce their right to vote." *Roberts v. Wamser*, 883 F.2d 617, 621 (8th Cir. 1989) (citing 42 U.S.C. § 1973a).  In order to establish constitutional standing, "[a] plaintiff ordinarily must show (1) an injury in fact, (2) that the injury is fairly traceable to the challenged conduct, and (3) that a victory in litigation will likely redress the injury." *Little v. Shell Exploration & Production Co.*, 690 F.3d 282, 285 (5th Cir. 2012); *see also Dutmer v. City of San Antonio, Tex.*, 937 F. Supp. 587, 590-91 (W.D.

Tex. 1996) (Biery, J.) (addressing standing requirements in a Voting Rights Act case); *Newman v. Voinovich*, 789 F. Supp. 1410, 1415 (S.D. Ohio 1992) (same), *aff'd*, 986 F.2d 159 (6th Cir. 1993).  Plaintiffs meet none of these tests.

Plaintiffs are not "aggrieved persons" under the Voting Rights Act, nor have they suffered an injury in fact.  Plaintiffs' alleged injury is at best a generalized grievance potentially shared by many.  They do not claim that the ballot language effectively denies *them* the right to vote because of *their* race or language.  Addressing similar circumstances, the Western District of Texas has determined that a plaintiff failed to establish standing.  In *Dutmer*, the non-minority plaintiff could not meet the injury-in-fact requirement because "she ha[d] not alleged she ha[d] been denied the opportunity to participate in the electoral process by reason of her race or language." *Id.* at 591.  Instead, the plaintiff merely alleged that the challenged provision had a "potential for creating inequities in the opportunities of minority and white voters to elect their preferred representatives." *Id.*  The court rejected this argument, finding that the "allegation of some possible future harm does not present a controversy ripe for adjudication." *Id.*

Likewise, in *Perry-Bey v. City of Norfolk, Va.*, the Eastern District of Virginia dismissed the plaintiff's Voting Rights Act claim, stating:

> Because the explicit language of the Voting Rights Act requires that alleged abridgement arise on account of race or color, and because the Supreme Court has read the Voting Rights Act to protect minority rights in vote dilution claims, Plaintiff's Amended Complaint is constitutionally and statutorily deficient for failure to allege an actual and concrete invasion of a protected interest. It fails to allege that she is a member of a minority group and that her right to vote has been abridged on account of her race or color, thus suffering a constitutional injury in fact.

678 F. Supp. 2d 348, 363 (E.D. Va. 2009).  And in *Newman*, the Southern District of Ohio found that the plaintiff was not an "aggrieved person" under the Voting Rights Act, as there was "no

theory set forth by the plaintiff upon which this white male plaintiff may be permitted to advance the rights and interests of the minority population." 789 F. Supp. at 1416.

Plaintiffs assert that they have standing because they oppose Proposition 1. Pls.' 2d Am. Complaint at ¶¶ 2, 11. Addressing a candidate election, the Eighth Circuit has rejected a similar argument. In *Roberts*, the court concluded "that an unsuccessful candidate does not have standing under the Voting Rights Act," explaining that "[t]he purpose of the Voting Rights Act is to protect minority voters, not to give unsuccessful candidates for state or local office a federal forum in which to challenge elections." 883 F.2d at 621. Furthermore, the court saw "good reasons why Congress would not have wished to confer standing on defeated candidates." *Id.* One of those reasons was that "because state and local election contests are quintessential state and local matters, to extend standing to an unsuccessful candidate to challenge his electoral defeat under the Voting Rights Act would violate principles of federalism in a highly radical way—an intention we should not attribute to Congress except upon its unmistakably clear manifestation in the statutory language." *Id.*

Like the defeated candidate in *Roberts*, Plaintiffs—the defeated opponents of Proposition 1—lack standing under the Voting Rights Act. "The purpose of the Voting Rights Act is to protect minority voters," not to provide opponents of a ballot measure a federal forum to challenge election results. *See Roberts*, 883 F.2d at 621. Even if one or more of the Plaintiffs were minority voters—which Plaintiffs have not alleged—they would still not have standing under the Voting Rights Act. The Second Amended Complaint does not allege that any of the Plaintiffs personally lacks the reading comprehension skills to understand the ballot measure. Since no Plaintiff is an "aggrieved person" who has suffered an injury in fact based on the wording of Proposition 1, Plaintiffs' Voting Rights Act claim should be dismissed.

2. **Plaintiffs have failed to state a claim under Section 2 of the Voting Rights Act.**

Plaintiffs' claim that the ballot language for Proposition 1 violates § 2 of the Voting Rights Act fails to state a claim cognizable under that statute. Plaintiffs' only claim here is that the inclusion of ballot language beyond that required by Texas Health & Safety Code § 281.124 "present[s] an opportunity for denial of voting rights by a discriminatory result based upon the 'totality of the circumstances' test, within Section 2 of the Voting Rights Act, upon voters with a [sic] less reading comprehension, and particularly among minority voters." Pls.' 2d Am. Complaint at ¶ 17.

Plaintiffs have not identified any authority to support their claim that the wording of a ballot measure can give rise to a Voting Rights Act violation. While the Voting Rights Act does protect linguistic minorities who cannot understand the *language* used on the ballot, *see* 42 U.S.C. § 1973b(f)(2), that is not an issue here because the ballot included a Spanish translation of Proposition 1. In forty-seven years of reported cases, there is no precedent establishing a cause of action under the Voting Rights Act based on reading comprehension.

Even if the ballot language were confusing to voters with lower reading comprehension skills, it cannot violate the Voting Rights Act because it did not result in minorities "hav[ing] less opportunity than other members of the electorate to participate in the political process." 42 U.S.C. § 1973(b). Both federal and Texas law protect and provide assistance to voters who are unable to read the ballot. Section 208 of the Voting Rights Act provides that "Any voter who requires assistance to vote by reason of blindness, disability, *or inability to read or write* may be given assistance by a person of the voter's choice, other than the voter's employer or agent of that employer or officer or agent of the voter's union." 42 U.S.C. § 1973aa-6 (emphasis added). Texas law also provides for assistance for those who are unable to read the ballot: "A voter is

eligible to receive assistance in marking the ballot, as provided in this subchapter, if the voter cannot prepare the ballot because of: (1) a physical disability that renders the voter unable to write or see; or (2) an inability to read the language in which the ballot is written." TEX. ELEC. CODE § 64.031.  Additionally, Texas law provides that:

> (a) If a voter is assisted by election officers, one of them shall read the entire ballot to the voter unless the voter tells the officer that the voter desires to vote only on certain offices or measures. In that case, the officer shall read those items on the ballot specified by the voter.
>
> (b) If a voter is assisted by a person of the voter's choice, an election officer shall ask the voter being assisted whether the voter wants the entire ballot read to the voter. If so, the officer shall instruct the person assisting the voter to read the entire ballot to the voter.

TEX. ELEC. CODE § 64.033.  A voter's inability to comprehend the ballot language on his or her own would not impede the voter's ability to participate in the election.

Even if there were some legal basis for a Voting Rights Act challenge based on alleged reading comprehension problems, Plaintiffs still have failed to state such a claim here. Plaintiffs only challenge the second part of the ballot proposition, which describes how the increased tax revenues would be expended. On its face, this is the clearest part of the proposition. The proposition language that an ordinary person might find confusing is the first part, which is mandated by the Legislature and which Plaintiffs do not challenge. There is nothing confusing or misleading about the second part of the ballot provision.

Accordingly, the Court should dismiss Plaintiffs' Voting Rights Act claim for failure to state a claim on which relief may be granted.

### B.     This Court should dismiss Plaintiffs' § 1983 claim for due process violations.

Plaintiffs also allege that the ballot language used in Proposition 1 violates their due process rights under 42 U.S.C. § 1983. Specifically, Plaintiffs allege that, "[b]y adding the extra advocacy language, without a fair and neutral opportunity for an opposing viewpoint to be

included on the ballot regarding the proposition, the Board's actions are a violation of the civil rights of Plaintiffs and have denied them procedural due process under the 14th Amendment to the United States Constitution." Pls.' 2d Am. Complaint at ¶ 27.  This allegation fails to state a procedural due process claim.

"In order for a person to have a procedural due process claim that damages or other relief can remedy, he must have been denied life, liberty, or property protected by the Fourteenth Amendment." *Wilson v. Birnberg*, 667 F.3d 591, 597 (5th Cir. 2012).  Courts apply a two-step process to determine "whether an individual's procedural due process rights have been violated. The first question asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Meza v. Livingston*, 607 F.3d 392, 399 (5th Cir. 2010) (internal quotation marks omitted).

As a threshold matter, Plaintiffs do not have standing because they have not alleged that they sought to affect the ballot language but were denied the opportunity.  Nor have they alleged that they were deprived of any other opportunity to participate in the process of placing Proposition 1 on the ballot.  The Board of Managers for the District conducted a public meeting on August 15, 2012, to discuss a proposed tax ratification election.  Notice of this meeting, along with the agenda listing the proposed proposition as an item for discussion and action, was properly posted and recorded.[5]  The minutes of the meeting show that at least six members of the public spoke against the proposal.[6]  The language of the proposed proposition was also discussed

---

[5] A file-stamped copy of this meeting notice is available at
http://traviscountyhd.granicus.com/DocumentViewer.php?file=traviscountyhd_88bba07c88dbbf702987fa610dd478d4.pdf&view=1&showpdf=1.

[6] The minutes from this meeting are available on the District's website, at
https://www.dropbox.com/sh/emekowp5w1hmxjc/JLMZlrHCpU/FY%2008.15.12%20Board%20Minutes%20-%20Approved.pdf.

at this meeting. Ultimately, the Board voted for the resolution that placed Proposition 1 on the ballot. Plaintiffs had the opportunity to participate in this meeting, and they have not alleged that they were denied that opportunity. Thus, even assuming a right to participate in the process leading to a legislative action, Plaintiffs have not suffered an injury in fact and do not have standing. *See Little v. Shell Exploration & Production Co.*, 690 F.3d 282, 285 (5th Cir. 2012).

Plaintiffs have also failed to state a claim for a procedural due process violation. First, Plaintiffs have not identified a liberty or property interest, or any actions by the District that deprived them of any such interest. Although Plaintiffs suggest they have a right to "a fair and neutral opportunity for an opposing viewpoint to be included on the ballot regarding the proposition," they have identified no basis for such a right, much less alleged that it constitutes a protected property or liberty interest. Moreover, at least one federal court has declined to find a protected liberty interest in a state-law process to propose ballot initiatives. *See Montero v. Meyer*, 13 F.3d 1444, 1450 (10th Cir. 1994). In concluding that state law did not give the plaintiffs any legitimate right or liberty interest in participating in the process to place an amendment on the ballot, the Tenth Circuit observed that:

> Plaintiffs' alleged expectation in this case would inject into the initiative process a debate on the merits (or at least the phrasing of a ballot measure) that would diminish, at the critical point of framing the issue to reflect the intent of the proponents, the constitutional grant of the clear right of the people of Colorado to propose laws and amendments and have them presented to the electorate.

*Id.* As in *Montero*, even if Plaintiffs had identified a state law granting them an opportunity to present an opposing viewpoint to be included on the ballot, that law still would not create a liberty interest subject to due process protection.

Second, Plaintiffs have identified no procedures implemented by the District that were deficient. The Fifth Circuit has previously rejected a procedural due process claim related to the conduct of a state election. *See Angel v. City of Fairfield, Tex.*, 793 F.2d 737, 739 n.2 (5th Cir.

1986). Other federal courts have done the same. *See, e.g.*, *Missouri Roundtable for Life v. Carnahan*, 676 F.3d 665, 677-78 (8th Cir. 2012) ("Even assuming that Roundtable sufficiently asserted a liberty interest in Missouri's initiative procedures, it has failed to state a procedural due process claim because no party has established the state's review procedures to be inadequate or unconstitutional"); *see also League of Women Voters of Ohio v. Brunner*, 548 F.3d 463, 479 (6th Cir. 2008) ("The League contends that Ohio's voting system deprives Ohioans of 'their liberty interest in voting and does so without adequate pre- or post-deprivation process.' However, the League has not alleged a constitutionally protected interest. The brevity of argument in the League's brief—which subsumes procedural due process into the substantive due process analysis—reflects the lack of authority for this position.").

Plaintiffs have failed to state a claim for a procedural due process violation, and their due process claim should be dismissed.

### III.   CONCLUSION & PRAYER

Plaintiffs lack standing and have failed to state a claim for a Voting Rights Act violation or a due process violation under § 1983. Accordingly, Defendant Travis County Healthcare District asks this Court to dismiss Plaintiffs' claims with prejudice and grant Defendant all other relief to which it may be entitled.

    Respectfully submitted,

    **THOMPSON & KNIGHT LLP**

    By:   */s/ James E. Cousar*
        James E. Cousar
        State Bar No. 04898700
        james.cousar@tklaw.com

       Danley Cornyn
       State Bar No. 24069535
       danley.cornyn@tklaw.com

Thompson & Knight, LLP
98 San Jacinto Boulevard, Suite 1900
Austin, Texas 78701-4238
(512) 469-6100 (Phone)
(512) 469-6180 (Fax)

DAVID ESCAMILLA
County Attorney, Travis County
P.O. Box 1748
Austin, Texas 78767
Telephone:  (512) 854-9513
Facsimile:  (512) 854-4808

    Sherine E. Thomas
    Assistant County Attorney
    State Bar No. 00794734

    Elaine A. Casas
    Assistant County Attorney
    State Bar No. 0785750

    Jennifer Kraber
    Assistant County Attorney
    State Bar No. 24027426

ATTORNEYS FOR DEFENDANT
TRAVIS COUNTY HEALTHCARE DISTRICT

## CERTIFICATE OF SERVICE

  I certify that on this the 7th day of November 2012, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court for the Western District of Texas using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to all counsel of record.

                   */s/ James E. Cousar*
                  James E. Cousar

519452 000003 5357740.4