UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| **Don Zimmerman, Michael Cargill, Mario Jordan, and Travis County Taxpayers Union SPAC,**  *Plaintiffs,*  **vs.**  **Travis County Healthcare District,**  *Defendant.* | Cause No. 1:12-cv-00972-LY  JURY  **Plaintiffs' Response to Defendant's Motion to Dismiss** |

Pursuant to the Federal Rules of Civil Procedure, Plaintiffs Don Zimmerman, Michael Cargill, Mario Jordan, and Travis County Taxpayers Union SPAC file this response to Defendant's Motion to Dismiss.

## Introduction

Defendants wholly fail to grasp a critical aspect of Plaintiffs' argument. First, the issue is not about having the language read, but about *reading comprehension*. Second, preclearance is purely prophylactic, and the DOJ's letter states it solely applies to Section 5 preclearance and "does not [serve as a] bar [to] subsequent litigation to enjoin enforcement of the changes."

Third, it cannot be reasonably stated that the Plaintiffs' due process rights haven't been violated. The legislative history shows the express language of the statute, which has been codified in the Texas Health and Safety Code, and the Texas Election Code governs its application. Both Texas and federal law prohibit due process violations,

which include the particularized injury of Plaintiffs Zimmerman and TCTU, whether in this Court's original federal question jurisdiction or state supplemental jurisdiction.

## ARGUMENT

**A. Plaintiffs fully overcome any standing challenge under Section 2 of the VRA and put forth an clear Section 2 claim.**

**1.** *Plaintiffs, as minority voters, meet the class of people Section 2 intends to protect.*

Defendants unfortunately "leap" before "looking" on their Section 2 argument. The VRA claim does not rest on purely politically opposition to Proposition 1. The claim rests upon the change in language that put the proposition beyond the reading comprehension level of some of the Plaintiffs, Mssrs. Cargill and Jordan, an adverse impact based on their race.

Both Mssrs. Cargill and Jordan, by affidavit, have shown (1) an injury in fact (lack of comprehension of the ballot language), (2) the injury is fairly traceable to the challenged conduct (the actions of the District—in exceeding the permissible statutory language—proximately caused the injury), and (3) victory in litigation will likely redress the injury (injunctive relief against canvassing the ballot will cure the injury). *See Little v. Shell Exploration & Prod. Co.*, 690 F.3d 232, 285 (5th Cir. 2012).

Evidence submitted in support of preliminary relief by affidavit of the Plaintiffs and by reports from both the Texas Education Agency and the Literacy Coalition of Central Texas place Mssrs. Cargill and Jordan (1) in a group expressly protected under the VRA, (2) particularly impacted because their minority groups historically have a below average reading comprehension level within the area served by the District, and (3) this impact is wholly different than a generalized grievance shared by many. This meets the focus of Section 2, that "no voting-procedure changes would be made that would lead to a retrogression in the position of racial minorities with respect to their effective

exercise of the electoral franchise." *See Beer v. United States*, 425 U.S. 130, 141 (1976). If minorities in Travis County (essentially Austin) have a harder time with reading comprehension, a marked change in the voting procedure would lead to a retrogression on their franchise.

The District, apparently assuming Mssrs. Cargill and Jordan are non-minority plaintiffs, cites to *Dutmer v. City of San Antonio, Tex.*, 937 F. Supp. 587, 590-91 (W.D. Tex. 1996). The lack of "similar circumstances"—Defendant's own words—makes their standing challenge fail on its face. *Dutmer*'s decision rejected its claim of Section 2 standing for *one* reason: she was a non-minority. "Because it is uncontroverted Mrs. Dutmer is not a member of a group protected by the Voting Rights Act, she cannot meet the standing requirements of having suffered an 'injury-in-fact' . . . ." *Id.* at 591. Mssrs. Cargill and Jordan meet this standing requirement.

2. *Plaintiffs present a Section 2 claim based on comprehension, not simply language change.*

Defendants misconstrue this legal challenge. Section 208 of the VRA and Section 64 of the Texas Election Code do provide assistance for the mere task of "read[ing]" or "writ[ing]" on the ballot. *See* 42 U.S.C. § 1973aa-6; TEX. ELEC. CODE §§ 64.031, .033. The present challenge, however, regards reading comprehension. The Legislature, in its Bill Analysis of Texas Health and Safety Code Section 281.124, expressed that it "Sets forth the required language" that should appear before the voters. *See* Acts 2007, 80th Leg., ch. 164 (S.B. 1107 "Bill Analysis "). The introduced version sets it up clearly as an electoral proposition with express language. *See* Acts 2007, 80th Leg., ch. 164 (S.B. 1107, "Introduced Version").

Most certainly, reading a word is different than comprehending the same word. To "comprehend" primarily means "to grasp the nature, significance, or meaning of,"

and the related definitions of "comprehension" mean "the act or action of grasping with the intellect: understanding." WEBSTER'S NEW COLLEGIATE DICT. 229 (1981). Reading, on the other hand, is more mechanical: "to receive or take in the sense of (as letters or symbols) by scanning," "to utter aloud the printed or written words of," and only as a last definition includes "to understand the meaning of (written or printed matter) <students who can really [read] the classics," (implying some measure of scholarly study, inapplicable here). *Id.* at 953. Surely this Court sees the certain divergence between the two terms "read" and "comprehend."

The "assistance" provisions provide no safe harbor for the District. Quite contrary to Defendant's assertion that the ballot overtures "did not result in minorities 'hav[ing] less opportunity than other members of the electorate to participate in the political process," a minority voter who does not comprehend a word decidedly sits at a disadvantage. This is common sense. The issue is not the ability to read or write. It is reading comprehension, which is undoubtedly affected the voter regardless if, under federal or state law, a second person "reads" the ballot. *See* 42 U.S.C. 1973aa-6; TEX. ELEC. CODE 64.031.

Defendants make a conclusory claim that the second part of the ballot is clear, without any competent evidence in the form of studies, reports, or affidavits to support that statement. Def. Mtn. at 8. As Plaintiffs' affidavits stand uncontroverted by competent evidence, this Court should find in Plaintiffs' favor.

What the District misses also is the exclusive nature of the prescribed language in Texas Health and Safety Code 281.142, passed and unchanging, and the "bond"-style approach of propositions, a procedural requirement they erroneously confused. *Compare* TEX. ELEC. CODE § 52.072(e)(1)(B) (where the purpose of the bond, expressed in language to the voter, must be voted on and put into the measure) *with* TEX. ELEC. CODE

§ 52.072(e)(2) (where the tax increase language is merely "pasted" into place). How much is too much? Where it is (1) prescribed and (2) the legislature did not put in an alternative or is silent, then any extra language is too much, following the long accepted canon of "expressio unius est exclusio alterius." The prophylactic Section 5 clearance matters not, and specifically does not apply to "subsequent litigation. "

B.  **Plaintiff Zimmerman and TCTU overcome, by their particularized injury and other elements, any standing challenge under the Due Process Claim.**

Plaintiff Don Zimmerman as representative of the Travis County Taxpayer's Union (TCTU) possesses an exclusive, particularized injury under the Texas and federal constitutions. Texas law requires a plaintiff to allege some injury distinct from that sustained by the public at large. *Blum v. Lanier*, 997 S.W.2d 259, 261 (Tex. 1999); *Hunt v. Bass*, 664 S.W.2d 323, 324 (Tex. 1984). Federal law carries a similar standard. *See Friends of Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 180-181 (2000). Plaintiff Zimmerman formed TCTU exclusively to oppose Proposition 1, and thus has standing to challenge it under a due process challenge. And as will be incorporated here for brevity by reference from its presentation, *supra*, regarding the standing elements , Zimmerman meets the other elements of standing.

C.  **Dismissal under the District's posture ignores clear Rule 12 standards**

Standing under Rule 12 operates under the *Bell v. Hood* standard.  *See Bell v. Hood*, 327 U.S. 678 (1946).  Plaintiffs only need to state a claim that is "plausible." *Elsensohn v. St. Tammany Parish Sheriff's Office*, 530 F.3d 368, 372 (5th Cir. 2008).  Indeed, the "issue is ***not*** whether a plaintiff will ultimately prevail but ***whether*** the claimant is entitled to offer evidence to support the claims.  Indeed, it may appear from the face of the pleadings that a recovery is very remote and unlikely, but **that is not the test**." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds*, *Harlow v. Fitzgerald*, 457

U.S. 800 (1972) (emphasis added).

> In reviewing such a 12(b)(6) motion, this Court accepts as true all well-pled allegations, resolving *all doubts* in favor of the complainants. Such a motion will be granted only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. A motion to dismiss for failure to state a claim is *viewed with disfavor, and is <u>rarely</u> granted*.

*Tanglewood East Homeowners v. Charles-Thomas, Inc.*, 849 F.2d 1568, 1572 (5th Cir. 1988) (internal citations and quotation marks omitted) (emphasis added).

Thus, the appropriate question before this Court is not what the District wants. Plaintiffs need to merely prove this claim is "plausible." Essentially, the question for this Court at this point in the litigation is "could it have happened this way?", not, as the District demands, "Did it happen this way?" The Court's answer here should be "Yes, it could have," and relief for Plaintiffs in the form of an injunction should issue because they have standing.

          Respectfully submitted,

          CASEY LAW OFFICE, P.C.

           /s/ Stephen Casey

          Stephen Casey
          TX Bar No. 24065015

          600 Round Rock West Drive
          Suite 602
          Round Rock, TX 78681
          (512) 257-1324
          (512) 853-4098 (fax)

**Certificate of Service**

    I hereby certify that a true and correct copy of this memorandum was provided to Defendant's counsel through the ECF filing system in accordance with the Federal Rules of Civil Procedure.

                                                       /s/ Stephen Casey