IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED

2012 NOV 15  PM 4: 59

CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY_____*KKC*_____
DEPUTY

| | | |
|---|---|---|
| DON ZIMMERMAN, | § | |
| MICHAEL CARGILL, | § | |
| MARIO JORDAN, AND | § | |
| TRAVIS COUNTY TAXPAYERS | § | |
| UNION SPAC, | § | |
| PLAINTIFFS, | § | |
| | § | |
| V. | § | CIVIL NO.  A-12-CA-972-LY |
| | § | |
| TRAVIS COUNTY HEALTHCARE | § | |
| DISTRICT, | § | |
| DEFENDANT. | § | |

## ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

Before the court is the above styled and numbered cause by which Plaintiffs Don Zimmerman, Michael Cargill, and Mario Jordan, residents and registered voters in Travis County, Texas, and the Travis County Taxpayers Union Special Political Action Committee ("Committee")[1] complain about the language of Proposition 1, which proposed an increase to Travis County ad valorem taxes, as it appeared on the November 6, 2012 general-election ballot.  Plaintiffs contend that the ballot language of Proposition 1 violates:  (1) Section 2 of the Voting Rights Act; (2) the Due Process Clause of the United States Constitution; (3) the due-course-of-law provision of the Texas Constitution; and (4) the Texas Election Code.[2]

Pending is Plaintiffs' Memorandum of Case Law in support of Motion for Preliminary Injunction filed November 7, 2012 (Clerk's Document No. 13) (the "Motion"), Defendant Travis

---

[1] Unless referred to individually, for convenience the court refers to the plaintiffs collectively as "Plaintiffs."

[2] 42 U.S.C. § 1973; U.S. Const. art. I, § 9, cl. 3; Tex. Const. art. I, § 19; Tex. Elec. Code Ann. § 52.072(e)(2) (West Supp. 2012).

County Healthcare District's ("District") response filed November 9, 2012 (Clerk's Document No. 15), and Plaintiffs' Case Law Submission filed November 15, 2012. By their motion, Plaintiffs request that the court render a preliminary injunction restraining and enjoining the canvassing of ballots for Proposition 1 pending a decision in this action. Also pending is Defendant Travis County Healthcare District's Motion To Dismiss filed November 7, 2012 (Clerk's Document No. 12) and Plaintiffs' response filed November 9, 2012 (Clerk's Document No. 16). On November 14, 2012, the court held a hearing on Plaintiffs' motion for preliminary injunctive relief at which all parties were represented by counsel.[3] Having considered the Motion, response, the parties exhibits, the arguments of counsel, the case file, and the applicable law, the court will deny Plaintiffs' motion for preliminary injunctive relief. The District's motion to dismiss remains pending and is under submission.

The District's Board of Managers voted at a regularly scheduled meeting on August 16, 2012, to include an election by District residents on the November 2012 ballot for a five-cent ad valorem tax increase. Travis County is within the District. A public election is required because the proposed tax rate exceeds the District's maximum allowable rate, which is known as the rollback rate. *See* Tex. Health & Safety Code Ann. § 281.124 (West 2010). Proposition 1 appeared on the November 2012 ballot as follows,

> Approving the ad valorem tax rate of $0.129 per $100 valuation in Central Health, also known as the Travis County Healthcare District,

---

[3] Also pending on the docket is Plaintiffs' Application for Temporary Restraining Order and Injunction filed October 22, 2012 (Clerk's Document No. 2). At the November 14 hearing, the court inquired of Plaintiffs's counsel whether they continue to seek the relief requested in the application. Plaintiffs stated on the record in open court that they did not and requested that the application be withdrawn. Plaintiffs' Application for Temporary Restraining Order and Injunction filed October 22, 2012 (Clerk's Document No. 2) is therefore deemed withdrawn.

for the 2013 tax year, a rate that exceeds the district's rollback tax rate.  The proposed ad valorem tax rate exceeds the ad valorem tax rate most recently adopted by the district by $0.05 per $100 valuation; **funds will be used for improved healthcare in Travis County, including support for a new medical school consistent with the mission of Central Health, a site for a new teaching hospital, trauma services, specialty medicine such as cancer care, community-wide health clinics, training for physicians, nurses, and other healthcare professionals, primary care, behavioral and mental healthcare, prevention and wellness programs, and/or to obtain federal matching funds for healthcare services.**

(emphasis added).

Plaintiffs filed this action after early voting had begun.  The Proposition 1 language was precleared with the Department of Justice as required by Section 5 of the Voting Rights Act, and the Department raised no objection.  Plaintiffs, however, allege that the ballot language of Proposition 1 violates Section 2 of the Voting Rights Act as it discriminates "against voters with a less reading comprehension, and particularly among minority voters."  *See* 42 U.S.C. §§ 1973b, 1973c. Additionally, Plaintiffs allege that the ballot language violates their federal due-process rights,

> [b]y adding the extra advocacy language, without a fair and neutral opportunity for an opposing viewpoint to be included on the ballot regarding the proposition, the Board's actions are a violation of the civil rights of Plaintiffs and have denied them procedural due process under the 14th Amendment to the United States Constitution.

*See* 42 U.S.C. § 1983.

Plaintiffs also raise Texas state-law violations, contending that the ballot language of Proposition 1 unlawfully included the bolded language, which they contend improperly includes more than the language statutorily mandated for a tax proposition.[4]  *See* Tex. Health & Safety Code

---

[4] Section 281.124(c) provides:
> At the election, the ballot shall be prepared to permit voting for or against the proposition:

3

Ann. § 281.124(c) (West 2010) ("Section 281.124(c)").  Plaintiffs further allege that Proposition 1

"is misleading, uses language that is unapproved by the Texas legislature, uses language that requires

a higher level of reading comprehension which can be confusing to voters with lower reading skills,

and has the potential to harm minority voters."  They assert that the additional ballot language

violates the due-course-of-law provision of the Texas Constitution, as Plaintiffs were deprived of

the opportunity to oppose the additional advocacy language.  Finally, Plaintiffs contend that although

language regarding the purpose for a *bond* shall be included in a ballot bond proposition,

informational language regarding the purpose of a *tax increase* may not be included in a ballot

proposition for a tax increase.  *See* Tex. Elec. Code. Ann. § 52.072(e) (West Supp. 2010).[5]

---

"Approving the ad valorem tax rate of $ (insert total proposed tax rate) per $100 valuation in (insert district name) for the (insert current tax year) tax year, a rate that exceeds the district's rollback tax rate. The proposed ad valorem tax rate exceeds the ad valorem tax rate most recently adopted by the district by $ (insert difference between proposed and preceding year's tax rates) per $100 valuation."

[5] Section 52.072(e) provides:
In addition to any other requirement imposed by law for a proposition, including a provision prescribing the proposition language, a proposition submitted to the voters for approval of the issuance of bonds or the imposition, increase, or reduction of a tax shall specifically state, as applicable:
(1) with respect to a proposition seeking voter approval of the issuance of bonds:
    (A) the total principal amount of the bonds to be authorized, if approved; and
    (B) a general description of the purposes for which the bonds are to be authorized, if approved;
(2) with respect to a proposition that only seeks voter approval of the imposition or increase of a tax, the amount of or maximum tax rate of the tax or tax increase for which approval is sought.

4

Plaintiffs' position is that for a ballot tax proposition, only the statutorily mandated language may appear on a ballot.[6]

Plaintiffs request that the court (1) declare that the ballot language of Proposition 1 violates their rights under federal and Texas constitutional and statutory protections, and (2) render a preliminary and a permanent injunction against the District from deviating from the express language provided in Section 281.124(c).

**Preliminary-injunction analysis**

On November 7, 2012, the day after the November 2012 election, Plaintiffs moved the court to preliminarily enjoin the District from canvassing the Propostion 1 ballots. The canvass is scheduled for Monday, November 19, 2012. The District opposes Plaintiffs' Motion, contending that Plaintiffs have failed to identify any violation of federal law that would permit this court to enjoin the canvassing of ballots regarding Proposition 1.

A preliminary injunction is appropriate only if Plaintiffs demonstrate "(1) a substantial likelihood that [they] will prevail on the merits, (2) a substantial threat that [they] will suffer

---

[6] At the hearing, the parties engaged over whether only the state-law statutorily mandated language described by Section 281.124(c) be included on the ballot for Proposition 1 or whether other explanatory language, such as the bolded language that appears in Proposition 1, may be included. The parties refer the court to *Bischoff v. City of Austin*, 656 S.W.2d 209 (Tex. App.–Austin 1983, writ ref'd n.r.e.). *Bischoff* addressed the manner in which a Texas municipal-bond proposition was presented on a ballot. The *Bischoff* court noted that there was no set form for the proposition to appear on the ballot. The proposition that appeared on the ballot "mirror[ed] the language of the full proposition." *Bischoff* held that there was no abuse of discretion in the ballot language used because the proposition was presented with such definiteness and certainty that the voters would not be misled. *Id.* at 212. Plaintiffs argue that *Bischoff* is inapplicable here as it addressed a bond issue rather than a tax issue. The District counters, arguing that *Bischoff* stands for the proposition that explanatory, truthful, and nonmisleading language does not invalidate a ballot. The court considers this argument to apply to Plaintiffs' state-law claim that the ballot language of Proposition 1 violates Texas law.

irreparable injury if the injunction is not granted, (3) [their] substantial injury outweighs the threatened harm to the party whom [they] seek to enjoin, and (4) granting the preliminary injunction will not disserve the public interest." *Texas Med. Providers Performing Abortion Servs. v. Lakey*, 667 F.3d 570, 574 (5th Cir. 2012) (quoting *Bluefield Water Ass'n, Inc. v. City of Starkville, Miss.*, 577 F.3d 250, 252-53 (5th Cir. 2009)).   The Fifth Circuit has determined that "a preliminary injunction is an extraordinary remedy which should not be granted unless the party seeking it has clearly carried the burden of persuasion on all four requirements." *Planned Parenthood Ass'n of Hidalgo Cty. Tex., Inc. v. Suehs*, 692 F.3d 343, 348 (5th Cir. 2012).   "It is not enough for a court considering a request for injunctive relief to ask whether there is a good reason why an injunction should not issue; rather a court must determine that an injunction should issue under the traditional four-factor test." *Monsanto Co. v. Geertson Seed Farms*, ____ U.S. _____; 130 S.Ct 2743, 2757 (2010).

### Substantial likelihood of prevailing on the merits

Plaintiffs allege that the inclusion of the ballot language in excess of what is specifically provided by Texas law violates Section 2 of the Voting Rights Act.[7]   Plaintiffs allege that the

_____

[7] Section 2 provides:

> (a) No voting qualification or prerequisite to voting or standard, practice, or procedure shall be imposed or applied by any State or political subdivision in a manner which results in a denial or abridgment of the right of any citizen of the United States to vote on account of race or color, or in contravention of the guarantees set forth in section 4(f)(2), as provided in subsection (b).

> (b) A violation of subsection (a) is established if, based on the totality of circumstances, it is shown that the political processes leading to nomination or election in the State or political subdivision are not equally open to participation by members of a class or citizens

6

inclusion of ballot language in Proposition 1 beyond that stated in Section 281.124(c) "present[s] an opportunity for denial of voting rights by a discriminatory result based upon the 'totality of circumstances' test, within Section 2 of the Voting Rights Act, upon voters with a [sic] less reading comprehension, and particularly among minority voters." They allege that it "is a violation of the Voting Rights Act as such change will tend to have a discriminatory effect on minority voters based on historical dat[a] such as reading comprehension."

The purpose of the Voting Rights Act is to protect racial and language minorities against conduct from the majority, which would abridge their right to vote. *Thornburg v. Gingles*, 478 U.S. 40, 43 (1986). "The essence of a [Section] 2 claim is that a certain electoral law, practice, or structure interacts with social and historical conditions to cause an inequality in the opportunities enjoyed by black and white voters to elect their preferred representatives." *Id.* at 49. Plaintiffs argue that they have properly invoked Section 2 of the Voting Rights Act, because the ballot language used

---

protected by subsection (a) in that its members have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice. The extent to which members of a protected class have been elected to office in the State or political subdivision is one circumstance which may be considered: Provided, that nothing in this section establishes a right to have members of a protected class elected in numbers equal to their proportion in the population.

42 U.S.C. § 1973. Further,

No voting qualification or prerequisite to voting, or standard, practice, or procedure shall be imposed or applied by any State or political subdivision to deny or abridge the right of any citizen of the United States to vote because he is a member of a language minority group.

42 U.S.C. § 1973b(f)(2).

in Proposition 1 goes beyond that allowed by state statute, thus there is a change to a certain electoral law, practice, or structure that interacts with social and historical conditions to cause an inequality in the opportunities enjoyed by black and white voters to express their preferred choice.

Plaintiffs direct this court to no authority to support their allegations that the ballot language of Proposition 1 violates their rights under Section 2 of the Voting Rights Act, their due-process rights, or any state-law statutory provision. The District argues that this court should hold as a matter of law that the challenged ballot language for Proposition 1 is not confusing. *See National Audubon Society, Inc. v. Davis*, 307 F.3d 835, 858 (9th Cir. 2005) (material "was not completely inaccurate"); *Grudinski v. Bradbury*, Civ. No. 07-6195-AA, 2007 WL 2733826, at *6 (D. Or. Sept. 12, 2007) (ballot measure was not misleading and would not confuse voters).

The District argues that the Plaintiffs have failed to establish that they each have standing to urge their claims. It asserts that Zimmerman's affidavit provides no basis for his standing to raise any claims alleged other than that he helped form the Committee, which was created to oppose Proposition 1. The District also challenges Cargill and Jordan's undated affidavits, which state that they are minority voters and were confused about the ballot language. Absent from these affidavits is any statement that their alleged confusion kept either of them from voting against Proposition 1 or otherwise limited their ability to participate in the political process. Further, the public voting records of the Travis County Tax Assessor-Collector reflect that Cargill and Jordan voted after the filing of this lawsuit. Thus, even with the lawsuit on file complaining of incomprehensible language in Proposition 1, lacking is any contention that either of them was prevented from voting by the language of Proposition 1 or was unprepared to cast a vote against Proposition 1 at the voting booth.

The court has serious concerns about each of the four Plaintiffs' standing to urge their claims. A lack of standing alone would bar the relief sought by Plaintiffs. However, because of the exigency of circumstances due to the need to canvass the ballots within the period provided by Texas law, the court today considers only Plaintiffs' request for preliminary injunctive relief. The court will consider more fully the District's contention that Plaintiffs lack standing, when the court addresses the District's motion to dismiss.

The court holds that Plaintiffs have failed to establish a substantial likelihood of prevailing on the merits. Plaintiffs ask this court to broaden application of the Voting Rights Act well beyond what was ever envisioned by Congress. If the Plaintiffs survive the District's standing challenge, they have an almost impossible burden to demonstrate that the Voting Rights Act provides them the opportunity to challenge the language of Proposition 1.

**Substantial threat Plaintiffs will suffer irreparable harm**

Plaintiffs argue that once canvassed, Proposition 1 will be law and will be implemented on a preset timetable. Therefore, Plaintiffs contend they will suffer irreparable harm if canvassing is not enjoined.

The District responds that Plaintiffs will suffer no irreparable harm from canvassing of the Proposition 1 ballots. Property taxes of a taxing entity may not be imposed "until the governing body has adopted a tax rate for that year." Tex. Tax. Code Ann. § 26.05(b) (West Supp. 2012). Further, the District's Board cannot adopt a new tax rate for 180 days after a tax ratification. Tex. Health & Safety Code Ann. § 281.124(c) (West 2010). This means that appraisal rolls for 2013 are due by August 7, 2013, and the tax rate must be set by the latter of Sept. 30, 2013, or 60 days after the rolls are received. Tex. Tax. Code Ann. 26.05(a) (West Supp. 2012). Therefore, the court finds

that there is no immediate harm from canvassing the ballots.  Further, should the court elect not to dismiss the action, there is time yet for the court to address Plaintiffs' claims in a deliberate manner without an injunction.  Finally, there is no evidence that Plaintiffs would be unable to obtain relief if a new tax rate is imposed and the court later determines that the tax increase is invalid.  The court finds no immediate threat of irreparable harm to Plaintiffs should canvassing of Proposition 1 ballots proceed.

### Balance of equities and hardship falls to Plaintiffs if injunction not granted

Plaintiffs argue that to date no work has begun and no funds expended under Proposition 1, so the balance of hardship would fall on the Plaintiffs if preliminary injunctive relief is not granted. Plaintiffs argue that there is no need or urgency for canvassing of the ballots right away.

The District responds that this factor goes along with the previous factor.  Further, the District argues it is the District that suffers harm by delaying the canvassing of the Proposition 1 ballots.  The court agrees with the District and holds that it is the District that suffers by a delay in canvassing the ballots.  Plaintiffs are correct that certain events happen on a timetable, but no tax rate increase occurs until voted on by the Board.  Further, the court is unaware of anything that would prevent Plaintiffs from seeking relief should the tax rate increase be determined to be invalid.

### Will not disserve the public interest

Plaintiffs argue that to postpone the canvassing would not disserve the public interest as the public's interest in upholding the election laws is of greater importance than canvassing the ballots of Proposition 1.  The District argues that the implementation of Proposition 1 is in the public's interest.  Residents of the District, by roughly 55% of those voting in the November 2012 election, approved the tax increase on themselves presented in Proposition 1 after a highly visible campaign.

10

**Conclusion**

Having considered the four-factor test, the court holds that Plaintiffs have failed to establish that there exists a substantial likelihood they will succeed on the merits of their claims, that there is a substantial threat of irreparable injury if the injunctive relief requested is denied, that the balance of equities and hardship fall to Plaintiffs if the injunction is not granted, and that a failure to grant the injunctive relief will disserve the public interest. Plaintiffs' request for a preliminary injunction will be denied.

**IT IS ORDERED** that Plaintiffs' Motion filed November 7, 2012 (Clerk's Document No. 13) is **DENIED**.

Defendant Travis County Healthcare District's Motion To Dismiss filed November 7, 2012 (Clerk's Document No. 12) and Plaintiffs' response filed November 9, 2012 (Clerk's Document No. 16) remain pending and under submission.

SIGNED this _____15th_____ day of November, 2012.


_____
LEE YEAKEL
UNITED STATES DISTRICT JUDGE

11